IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARK ANTHONY LILLY #748163 | § | |
| v. | § | CIVIL ACTION NO. 6:08cv118 |
| WARDEN WEBB, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Mark Lilly, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in these proceedings pursuant to 28 U.S.C. §636(c). Webb originally filed his lawsuit in the Northern District of Texas, complaining of incidents occurring at the Robertson Unit and the Beto I Unit; those claims which concerned the Beto I Unit, and the defendants located there, were transferred to the Eastern District of Texas. The defendants in the lawsuit at the Beto I Unit are Warden Webb, Warden Herrera, Sgt. Milton, and Major Owens.

An evidentiary hearing was conducted on October 21, 2008. At this hearing and in his complaint, Lilly asserts that the Defendants were deliberately indifferent to his safety. He states that he has been concerned since 2001 that his life may be in danger. He told officials at the Smith Unit that he was in danger from a prison gang called the Mandingo Warriors, and he was transferred to the Beto Unit in September of 2003, where he was placed into general population by a unit classification committee headed by Warden Herrera.

Lilly explained that he had been assaulted at the Smith Unit and was transferred around to several different units, and that this was the second time he had been at the Beto Unit. When he arrived, he told a sergeant named Carver that he was "doing things to keep himself safe," including

1

holding weapons and contraband and engaging in sexual activities. Significantly, Lilly acknowledged that he did not file any grievances or complaints saying that his life was in danger, although he indicated that he had done so the first time he had been on the Beto Unit, in 2001.

Lilly said that he had carried out approximately 45 "hits" for the Mandingo Warriors, including a "hit" some time around January or February of 2007; he explained that he did so for "his own safety." After the 2007 "hit," he was placed in transient status for four months while an investigation was conducted, and then was put in close custody. Lilly stated that he was away from the Mandingo Warriors while he was in close custody, but after he was released from that status, he went to them and told them that he wanted to dissociate himself from the gang. On October 7, 2007, he was assaulted and stabbed by three Mandingo Warrior gang members.

Following this assault, Lilly says, he was taken to see Major Owens, where he made a statement detailing the stabbing. Owens said that he would include in his report a recommendation that Lilly be placed in protective custody, but Lilly acknowledged that he did not know if Owens had actually done so or not. However, he says that he was placed on transient status for an offender protection investigation.[1] While Lilly was in transient status, Sgt. Milton made a statement to the effect that Lilly "was working for us now." Lilly made clear that this statement was made after the stabbing had taken place. A couple of weeks later, Lilly said, he was transferred to the Robertson Unit.

### The TDCJ Records

Lilly's TDCJ classification records, including his offender protection investigation records, show that on October 7, 2007, Lilly was assaulted by three Mandingo Warriors, and gave

---

[1] Protective custody is a classification with TDCJ-ID's administrative segregation plan. It offers the highest level of security because it has 24-hour per day protection. Safekeeping, by contrast, is a general population classification. Inmates on safekeeping eat and work with the rest of general population, but have a separate housing area. Transient status refers to a housing area away from other inmates, but not in general population or administrative segregation. *See* TDCJ Inmate Orientation Handbook, p. 6 (available online at http://www.tdcj.state.tx.us/publications/cid/publications-cid-offender-orientation-handbook.htm).

2

a written statement explaining that he wanted out of the gang but he "knew too much." The prison security threat group officer conducted interviews with members of the gang, and they claimed that the assault was because Lilly "was not obeying the rules and regulations" of the gang.

In November of 2006, an inmate named Thomas Else was assaulted by inmates Tito Bolden and an unknown inmate, whom prison officials suspected was Lilly. However, Lilly denied any involvement, and the information pointing to him was not sufficient to charge him with the assault. Lilly denied that he was in any danger at the Beto Unit, but Major Catoe recommended that he be transferred out of concern that Else's friends could retaliate. The request for a transfer was denied by the Region II director.

A review of Lilly's grievance records confirms that he did not file a single grievance at the Beto Unit between September of 2003 and October of 2007 complaining that his life was in danger from gang members in general or Mandingo Warriors in particular. He did file grievances complaining that an officer named Allen was threatening him as well as grievances concerning disciplinary action which he received, harassment by Captain McDowell, failure by officers to use a protective shield in escorting inmates down the hallway, his wish to be separated from a female guard whom he had known since childhood, the loss of a hot pot, his receiving sheets which were torn, and his wish for another job assignment.

Three days after the stabbing, on October 10, 2007, Lilly filed a grievance saying that he had told the "Speaker" of the Mandingo Warriors that he wanted out of the gang and that this is why he was stabbed, but that the warden had told him that he was assaulted because of a prior stabbing which he, Lilly, had done. He asked to be placed in safekeeping or protective custody, and the response was that he is currently on transient status, awaiting a transfer, and that the State Classification Committee must approve or disapprove the unit committee's decision; if denied by the state committee, Lilly will be housed accordingly.

In his Step Two appeal of this grievance, Lilly said that his complaint was that at the time of the hearing, the warden did not request safekeeping or protective custody for him, but only placed

him in transient status. The response was that he can request safekeeping status upon arrival at his new unit, but if the State Classification Committee denies his request for a transfer, he will be evaluated by the unit classification committee at the Beto Unit for possible placement on safekeeping status.

Legal Standards and Analysis

Lilly's basic complaint is that the prison officials were deliberately indifferent to his safety. Prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

More recently, the Supreme Court has explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

4

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In this case, Lilly's own pleadings and testimony show that after he returned to the Beto Unit in September of 2003, he did not file a single grievance or complaint stating that his life was in danger, although he filed grievances on a variety of other problems. Thus, he offers no basis upon which to conclude that the prison officials at the Beto Unit knew of or disregarded an excessive risk to his health or safety. *See generally* Adames v. Perez, 331 F.3d 508, 513 (5th Cir. 2003). While it is true that he was transferred to several different units in an effort to secure his safety, and that he had been assaulted at the Smith Unit long before his arrival at the Beto Unit, these facts do not by themselves place the officials at the Beto Unit on notice that an excessive risk to Lilly's health or safety existed on that unit at the time that he was sent there. Lilly was transferred in order to remove him from a threatening situation, and he proffers no reason to conclude that the prison officials were deliberately indifferent to his safety in believing, in the absence of any grievances or complaints concerning life endangerment, that the purpose of this transfer had been achieved. In fact, the investigation report into the October 2007 assault shows that the last time that Lilly had requested protection was in 2003, at the Telford Unit.

In addition, Lilly stated that as late as January or February of 2007, he was carrying out "hits" on behalf of the Mandingo Warriors, a fact which would not lead prison officials to conclude that he was at risk from members of that same gang. He says that after being released from close custody, he told gang members that he was dissociating himself from the gang, but fails to indicate that he told the prison officials of this action; thus, assuming that Lilly is correct and that he was assaulted because of his attempt to dissociate himself, he makes no showing that the prison officials could have known of this.

Lilly complains that Warden Herrera presided over the unit classification committee meeting and did not recommend him for placement in safekeeping or protective custody. As noted above, however, he has not shown that this failure amounted to deliberate indifference to his safety, because

he has presented no basis upon which Herrera could have known that Lilly faced a significant risk to his health or safety, nor that Herrera disregarded this risk. Lilly did not complain of any such risk, and the Supreme Court specifically said that the failure to alleviate a significant risk which a prison official should have perceived but did not, while "no cause for commendation," cannot be condemned as the infliction of punishment. Farmer, 511 U.S. at 838. Lilly's claims show at most that Herrera failed to alleviate a significant risk which he perhaps should have perceived, but did not. His claim against Warden Herrera is without merit.

Next, Lilly sues Sgt. Milton, whom he says made the comment that "he [Lilly] is working for us now," in the hearing of other inmates. Lilly made clear that this occurred after the stabbing and that he was transferred to the Robertson Unit shortly thereafter; he does not indicate that he suffered any harm as a result of Sgt. Milton's comment.

In Castellano v. Treon, 79 Fed.Appx. 6 (5th Cir., October 21, 2003) (not selected for publication in the Federal Reporter), the plaintiff Andy Castellano alleged that the defendant prison officials were deliberately indifferent to his safety by labeling him as a "snitch" and assigning him to units where it was known that he was a "snitch." However, Castellano conceded that he suffered no actual injury as a result of the defendants' purported failure to protect him, and so the Fifth Circuit, citing Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999), determined that the district court did not err in dismissing the complaint as frivolous and that the appeal was itself frivolous.

The same situation exists in the present case. Like Castellano, Lilly has not shown that he suffered any harm as a result of Sgt. Milton's comment, and so his claim on this point is without merit.

Third, Lilly sues Major Owen, although the basis of his claim against Owen is not clear. He says that after he was stabbed, he was taken to Owen's office, where he gave a statement. In his statement, Lilly says that he was approached by his assailants and that he told them "it's over with, I'm getting out, no more," and that he had done "hits" for them in order to "clear the slate," but that he was through. He states that they "tried to fine me $3.00 for disrespect to the leadership" and that

he told them that he would "wear a skirt" before he paid them anything. He says that he received an "exile paper," which he signed, and the next day he was hit.

Captain Dickerson conducted the investigation and concluded that Lilly had been assaulted as he claimed and that the incident was a Mandingo Warrior "hit." Major Owens concurred with Dickerson's findings and forwarded the investigation to the unit classification committee, which recommended a unit transfer. Even if Owens told Lilly that he would recommend safekeeping or protective custody and then did not, this does not show that a constitutional violation took place; Lilly has not shown that Owens had a constitutionally mandated duty or obligation to make such a recommendation, much less that any such recommendation would have had any effect. The decision of the unit classification committee, which was to recommend a unit transfer but not placement in safekeeping or protective custody, was itself non-binding and subject to the decision of the State Classification Committee, and so Lilly has not shown that any constitutionally liberty interest was infringed by Owens' apparent failure to make a non-binding recommendation to the unit classification committee that they in turn make a non-binding recommendation to the State Classification Committee that Lilly be placed in protective custody or safekeeping.[2]

The last named defendant is Warden Webb. At the evidentiary hearing, Lilly testified that he sued Warden Webb because Webb had denied his grievances. However, the Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so.

---

[2] In addition, it appears that Lilly's own actions may have rendered him unsuitable for safekeeping or protective custody. As noted above, the TDCJ-CID Offender Orientation Handbook, p. 6, describes safekeeping status as "an additional level of protection from other offenders," and protective custody is an administratively segregated housing area. However, the evidence shows that Lilly had a history of acting in a violent and aggressive manner, inconsistent with placement in a protective housing status. *Cf.* Johnson v. Johnson, 385 F.3d 503, 512 (5th Cir.2004) (noting that safekeeping is a housing status that "separates vulnerable individuals from more aggressive offenders.") Lilly conceded that he had carried out a large number of "hits" for the Mandingo Warriors, which aggressive action is inconsistent with placement in safekeeping or protective custody, where inmates are placed to keep them away from aggressive behavior.

Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *accord*, Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Thus, Lilly has failed to show that Warden Webb violated any constitutionally protected liberty interest, and his claim against Webb is without merit.

The Court notes that at the evidentiary hearing, Lilly complained that he was being charged two filing fees for this lawsuit - one in the Northern District of Texas, where it was originally filed and where part remains pending, and one in the Eastern District of Texas, to which the remaining portion of the lawsuit was transferred. *See* Lilly v. Cook, et al., civil action no. 1:08cv30 (N.D.Tex.). The result of this partial transfer is that Lilly now has two separate lawsuits, one in the Northern District and one in the Eastern District, naming separate defendants and complaining about separate incidents. Consequently, there is no reason why he should have to pay two filing fees, one for each separate case. *See* Hatchet v. Nettles, 201 F.3d 651, 654 (5th Cir. 2000) (stating that "a prisoner proceeding IFP in the district court is obligated to pay the full filing fee upon the filing of the complaint"). The situation would be different if Lilly had filed his lawsuit in the Northern District and it had been transferred *in toto* to the Eastern District; in that case, he would still have only one lawsuit, and would be obligated to pay only one filing fee. Here, however, he has two separate civil actions pending, and cannot evade the fee requirements by the simple expedient of filing all of his claims in one lawsuit, to be severed by the courts. His contention on this point is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. The Fifth

Circuit has held that Section 1915A applies to all lawsuits filed by persons in confinement, even those where, as here, the plaintiff is not proceeding *in forma pauperis*. Ruiz v. United States, 160 F.3d 273, 274-75 (5th Cir. 1998).

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Lilly's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **29** day of **December, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE